2007 BNH 011     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 06-10119-JMD |
| | Chapter 7 |
| Christopher H. Gilbert, | |
|     Debtor | |
| | |
| Elizabeth Teasck and | |
| Darren Teasck, | |
|     Plaintiffs | |
| | |
| v. | Adv. No. 06-1142-JMD |
| | |
| Christopher H. Gilbert, | |
|     Defendant | |

*Karyn Forbes, Esq.*
*Shaheen & Gordon, PA*
*Concord, New Hampshire*
*Attorney for Plaintiffs*

*Jennifer Rood, Esq.*
*Bernstein, Shur, Sawyer & Nelson, P.A.*
*Manchester, New Hampshire*
*Attorney for Debtor/Defendant*

## MEMORANDUM OPINION

### I.  INTRODUCTION

Christopher Gilbert (the "Debtor") has filed a motion seeking summary judgment in his favor on all three counts of the complaint filed by Elizabeth and Darren Teasck (the "Plaintiffs") (Doc. No. 12) (the "SJ Motion").  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11

Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, a summary judgment motion should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodriguez, 23 F.2d 576, 581 (1st Cir. 1994).

### A. Undisputed Facts

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code[1] on February 15, 2006. Prior to October of 2005, the Debtor was the managing member and the sole

---

[1] In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

2

member of Windmill Hill Builders, LLC ("Windmill Hill"), a New Hampshire limited liability company engaged in the business of constructing custom homes. On December 22, 2004, the Plaintiffs entered into a construction contract with Windmill Hill for the construction of a house in Pembroke, New Hampshire (the "Contract"). The Contract required Windmill Hill to complete construction on or before July 24, 2005, and also included the following terms:

> 1. The Plaintiffs agreed to pay to Windmill Hill a deposit in the amount of $14,000.00 with the understanding and agreement that Windmill Hill would utilize the deposit in the construction of the home for the Plaintiffs. The deposit was refundable if the purchase of the house lot did not occur.
>
> 2. Windmill Hill agreed to comply with New Hampshire mechanic lien laws set forth in NH RSA 477 and not to allow any liens to be placed on the property of the Plaintiffs.

The Debtor did not personally guarantee the Contract.

Between May 4 and October 17, 2005, Windmill Hill received six disbursements from GMAC Mortgage ("GMAC"), the Plaintiffs' mortgage lender, totaling $227,750.00 against a construction budget of $280,000.00. Each of the six disbursements to Windmill Hill was made after Windmill Hill submitted to GMAC a General Contractor's Waiver of Mechanics Lien (the "Lien Waiver") and a General Contractor's Affidavit for Construction Loan Draw (the "Requisition"). The Lien Waivers released any mechanics lien against the property and any claim against the Plaintiffs and GMAC for monies due and owing as of the date of the Lien Waiver. The Lien Waivers also provided:

> The undersigned also hereby certifies and affirms that it has paid in full or will pay in full, all persons or entities who have, on its behalf, supplied labor or material to the property and that the undersigned will indemnify and hold harmless the owner from any and all claims made by such suppliers of labor and material.

3

Each Lien Waiver was executed by the Debtor on behalf of Windmill Hill, and not by him individually.  Each Requisition requested payment of a specified amount for work performed by Windmill Hill under the Contract.  Each Requisition also provided:

> 6. The undersigned hereby affirms under penalty of perjury that as of the date shown below all work on the Construction Project for which the current disbursement of funds is to be made has been completed and that all contractors, subcontractors, and suppliers of materials or labor have either been paid for their share of such work or will be paid out of the current disbursement.
>
> 7. The undersigned authorizes [GMAC] and any title insurance company providing loan title insurance to lender with respect to the loan for the Construction Project to rely upon this Affidavit in connection with the advance of funds by [GMAC] under the aforesaid Construction Loan Agreement, for purposes of NH RSA 447:12-a.
>
> 8. The undersigned hereby agrees to fully indemnify [Plaintiffs, GMAC] and any title insurance company providing loan title insurance to [GMAC] against any loss or damage either may suffer on account of any untrue statement contained in this Affidavit.

In addition, each Requisition included a spreadsheet which listed the categories of work to be completed under the Contract, the budgeted value for each such category, the amount previously disbursed and the value of the work in each category completed during the time period covered by the Requisition.

During 2005, most, if not all, of the monies Windmill Hill received from GMAC based on the Requisitions was deposited into Windmill Hill's general checking account along with Windmill Hill's other receipts.  The work on the Plaintiffs' home ceased no earlier than the end of October 2005.  At the time Windmill Hill ceased work, the construction contemplated under the Contract was not complete.  Subsequent to Windmill Hill ceasing work, various persons who

had supplied labor or materials to Windmill Hill in connection with the Plaintiffs' property asserted claims totaling at least $108,923.29. Windmill Hill filed a chapter 7 bankruptcy petition on December 8, 2005 (Bk. No. 05-56024-JMD).

### B. Disputed Facts

The parties do not agree that all persons providing labor and materials for the Plaintiffs' property through October 2005 were paid by Windmill Hill or that all of the funds advanced to Windmill Hill under the Requisitions were paid solely to persons providing labor or materials to Windmill Hill for work under the Contract. The Plaintiffs allege that three subcontractors of Windmill Hill sued the Plaintiffs and obtained mechanics liens totaling $27,869.40[2] and that three others holding claims totaling $77,067.27[3] threatened suit, but did not seek mechanics liens. The Plaintiffs contend that the check register for Windmill Hill shows that the deposit paid by them in December 2004 was used for expenses unrelated to their property, contrary to statements made to them by the Debtor. The Plaintiffs also contend that Windmill Hill received loan disbursements for numerous items for which the work was not completed as represented in the Requisitions. Such work includes the septic system, plumbing and heating work, the driveway and the HVAC system.

---

[2] The three subcontractors were identified as Home Beautiful, Inc. ($10,369.40), Brigade Fire Protection Incorporated ($12,000.00) and MASCO Contract Service d/b/a Quality Insulation, Inc. ($5,500.00).

[3] The three subcontractors threatening suit were identified as Overhead Door Co. ($1,860.00), R&T Electric, Inc. (unspecified amount) and The Boulia-Gorrell Lumber Co., Inc. ($75,207.27 for the Plaintiffs' property and other homes).

### C. Legal Analysis

The Plaintiffs filed a complaint objecting to the Debtor's discharge of a debt owed to them arising from the work contemplated in the Contract. The complaint is comprised of three counts:

> Count I: Obtaining money based upon false pretenses, false representations and/or actual fraud (§ 523(a)(2)(A)).
>
> Count II: Fraud or defalcation in not paying subcontractors for monies obtained through the Requisitions (§ 523(a)(4)).
>
> Count III: Willful and malicious injury to property of the Plaintiffs by converting funds disbursed under the construction loan to the Debtor's own purposes (§ 523(a)(6)).

There is no factual dispute that the Contract was between the Plaintiffs and Windmill Hill, that Windmill Hill executed all Lien Waivers and Requisitions, and that the Debtor did not personally guarantee the Contract or execute any Lien Waivers or Requisitions individually. It is also undisputed that the Plaintiffs can succeed in opposing the Debtor's discharge only if they can establish grounds to pierce the corporate veil and prove that Windmill Hill was the alter ego of the Debtor. New Hampshire law governs the Plaintiffs' attempt to pierce the corporate veil.

A limited liability company, like a corporation, is treated as a separate legal entity and its liabilities are not attributable to its owners and managing members. NH RSA 304-C:25. The parties have not cited and the Court has not found any New Hampshire law on the question of whether the "veil" of an LLC can be pierced in the same way that a corporate veil may be pierced. However, both parties have cited New Hampshire cases on the standards for piercing corporate veils. This lack of authority is likely due to the fact that LLCs are a relatively new form of legal entity in New Hampshire. Because New Hampshire law provides the owners and the managing members of an LLC with the same kind of limited liability as owners and officers

6

of corporations, it is likely that New Hampshire courts would permit piercing of the veil of an LLC under the same circumstances as permitted for corporations.  See Filo Am., Inc. v. Olhoss Trading Co., L.L.C., 321 F. Supp. 2d 1266, 1268-69 (M.D. Ala. 2004) (applying corporate veil piercing standards to an LLC under Alabama law); Turner v. Bolduc (In re Crowe Rope Indus., LLC), 307 B.R. 1, 7 (Bankr. D. Me. 2004) (applying corporate veil piercing standards to an LLC under Maine law).  Therefore, the Court shall follow New Hampshire law on corporate veil piercing in evaluating the Plaintiffs' claims in this case.

Under New Hampshire law, "a court may pierce the corporate veil if a shareholder suppresses the fact of incorporation, misleads his creditors as to the corporate assets, or otherwise uses the corporate entity to promote injustice or fraud."  Druding v. Allen, 122 N.H. 823, 827 (1982).  Evidence of a lack of sufficient separation between a corporation and a shareholder, so that the corporation is merely the shareholder's alter ego, is an important sign that the shareholder has abused the corporate form.  Northern Laminate Sales, Inc. v. Matthews, 249 F. Supp. 2d 130, 141 (D.N.H. 2003).  For example, where (1) a shareholder made knowingly false promises for the purpose of inducing a creditor not to attach corporate assets prior to a loan; (2) the loan closed; (3) the promises were breached in bad faith; and (4) most or all of the loan proceeds were paid to the shareholder, his family or his family-controlled business, the New Hampshire Supreme Court concluded the corporate form was used to promote fraud and injustice and pierced the veil.  LaMontagne Builders, Inc. v. Bowman Brook Purchase Group, 150 N.H. 270, 275 (2003).

The Plaintiffs make no allegation and nothing in the summary judgment record would support a claim that the Debtor agreed to be personally liable for the obligations of Windmill Hill.  Nothing in the summary judgment record would support a claim that the Debtor suppressed

the fact that Windmill Hill was an LLC.  Therefore, the Plaintiffs may pierce the LLC veil only if they can prove that the Debtor used Windmill Hill to promote injustice or fraud.  Druding, 122 N.H. at 827.  The Plaintiffs' claim appears to be based upon the theory that the Debtor may be held personally liable for any misrepresentation made by the LLC because the Debtor was the sole managing member and the owner of the LLC and all the Plaintiffs' dealings with Windmill Hill were through the Debtor.  However, veil piercing "is not permitted solely because a corporation is a one-man operation."  The Village Press, Inc. v. Stephen Edward Co., Inc., 120 N.H. 469, 471 (1980).  In order to prevail on their veil piercing argument, the Plaintiffs must establish that the LLC was used by the Debtor to promote his own private business rather than the business of the LLC and was used to promote an injustice or fraud.  Id.

  The summary judgment record contains nothing which raises any factual dispute that the Debtor ever misled or concealed Windmill Hill's status as an LLC from the Plaintiffs or GMAC.  The summary judgment record does not support a claim that the Debtor was conducting his personal business through Windmill Hill, rather than the business of the LLC itself which was residential construction.  The summary judgment record does not reveal any factual dispute that the Debtor commingled his personal assets with those of Windmill Hill or that he used the assets of Windmill Hill to pay anything other than the obligations of the LLC.  However, the summary judgment record does raise a factual dispute over whether the monies paid to Windmill Hill by, or on behalf of, the Plaintiffs were used as required by the Contract, the Lien Waivers and the Requisitions.

  The Plaintiffs first argue that the commingling of monies received from the Plaintiffs and GMAC with other monies of Windmill Hill violated the terms of the Contract.  However, the Court can find no provision in the Contract or New Hampshire mechanics lien law that requires

segregation of such monies.  The Plaintiffs argue that the Contract required Windmill Hill to use all monies received from them for the work on their home and Windmill Hill did not do so as evidenced by the mechanics lien claims which arose after Windmill Hill ceased work.  The Debtor denies that Windmill Hill used monies from the Requisitions for any purposes other than work under the Contract.  Therefore, the summary judgment record does raise a factual dispute over how funds paid to Windmill Hill by or on behalf on the Plaintiffs were used.  However, construing the summary judgment record on the use of monies, in the light most flattering to the Plaintiffs, the Court finds that although the record would support holding a trial on the issue of whether Windmill Hill breached its contract with the Plaintiffs, the record does not raise a material factual dispute that there has been injustice or fraud which would permit piercing the LLC veil.

     The Plaintiffs allege that on May 13, 2005, Windmill Hill received $9,500.00 under a Requisition for a septic system which system was never completed.  The Court notes that the spreadsheet attached to the Requisition, under which Windmill Hill received the payment for the septic system, contains a notation that the system was not complete.  The Requisition contains an affirmation by Windmill Hill that the suppliers of labor and materials for the work covered by the Requisition (i.e., the septic system) "either have been paid for their share of such work or will be paid out of the current disbursement" (emphasis added).  Construing the summary judgment record in the light most favorable to the Plaintiffs, at the time the disbursement for the septic system was made GMAC knew that it was not complete.  The summary judgment record would support a factual dispute that Windmill Hill breached its obligation to pay for the septic system from the Requisition.  However, nothing in the summary judgment record would support a finding that at the time the Requisition was submitted Windmill Hill did not intend to complete

the septic system and pay for the labor and materials from the proceeds of the Requisition. Absent a factual dispute on the issue of intent at the time the Requisition was submitted, the Plaintiffs cannot establish the fraud necessary to pierce the veil or to prevail under § 523(a)(2)(A).  Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).

The Plaintiffs also argue that Windmill Hill was undercapitalized.  The summary judgment record reflects that the profit and loss statement produced by the Debtor from the computer based books and records of Windmill Hill as of December 31, 2004, reflect a loss of $76,267.82 for calendar year 2004 and the balance sheet shows a negative net worth of $7,063.37.  The summary judgment record also reflects that during 2005 Windmill Hill did complete several residential construction projects, but when Windmill Hill ceased operations in late 2005, it had not completed two or three construction projects, one of which was the Plaintiffs' project.  The financial statements in the summary judgment record are based upon bookkeeping entries made by the Debtor and were offered with no analysis as to the cause of the operating losses (i.e., cash flow deficit or non-cash charges such as depreciation) or the impact of such losses on the operations of Windmill Hill.  The summary judgment record does establish that Windmill Hill operated for ten months beyond the date of the financial statements relied upon by the Plaintiffs and was successful in completing several construction projects during that time frame.  The summary judgment record contains nothing which suggests that the financial condition of Windmill Hill on December 31, 2004, was different from its condition in prior time frames or at the time it ceased operations.  The records are simply a snapshot at a point in time and are insufficient to support a claim that Windmill Hill was inadequately capitalized for the business it conducted.

This case involves the failure of a residential construction company which left several parties, including the Plaintiffs, with incomplete work and unpaid subcontractors with liens on their property.  The result of the business failure is unfair to the Plaintiffs.  However, if business failure alone were sufficient to permit veil piercing, then the public policy purposes behind corporations and other limited liability business entities would be frustrated.  It is easy to say with hindsight that personal guarantees should have been obtained or that the use of the proceeds from the Requisitions should have been more closely monitored.  However, hindsight, as reflected in the summary judgment record, does not raise any material factual dispute that Windmill Hill was operated as the alter ego of the Debtor or that the LLC was used by the Debtor to perpetrate injustice or fraud on the Plaintiffs sufficient to support veil piercing.  Even if the Plaintiffs could establish one or more of the counts in their complaint against Windmill Hill, the Plaintiffs have not established material facts from which the Court could pierce the LLC veil.  Accordingly, the SJ Motion shall be granted and judgment shall be entered in favor of the Debtor.

### III. CONCLUSION

For the reason set forth in this opinion, the Court shall enter a separate order granting the SJ Motion and enter judgment for the Debtor.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:   February 1, 2007                        /s/ J. Michael Deasy
                                                J. Michael Deasy
                                                Bankruptcy Judge